UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

REBECCA ANN KANCAR,

            Plaintiff,

    v.                                       19-CV-00856-LJV
                                                          DECISION & ORDER
COMMISSIONER OF SOCIAL
SECURITY,

            Defendant.

_____

       On June 25, 2019, the plaintiff, Rebecca Ann Kancar, brought this action under

the Social Security Act ("the Act").  She seeks review of the determination by the

Commissioner of Social Security ("Commissioner") that she was not disabled.  Docket

Item 1.  On November 22, 2019, Kancar moved for judgment on the pleadings, Docket

Item 8; on January 21, 2020, the Commissioner responded and cross-moved for

judgment on the pleadings, Docket Item 9; and on February 11, 2020, Kancar replied,

Docket Item 10.

       For the reasons stated below, this Court grants Kancar's motion in part and

denies the Commissioner's cross-motion.[1]

## **BACKGROUND**

       In denying Kancar's application, the ALJ evaluated her claim under the Social

Security Administration's five-step evaluation process for disability determinations.  *See*

---

      [1]  This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

20 C.F.R §§ 404.1520(a)(2); 416.920(a)(2).  At the first step, the ALJ determines whether the claimant currently is engaged in substantial gainful employment. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i).  If so, the claimant is not disabled.  *Id.*  If not, the ALJ proceeds to step two.  §§ 404.1520(a)(4); 416.920(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments.  §§ 404.1520(a)(4)(ii); 416.920(a)(4)(i).  If there are no severe impairments, the claimant is not disabled.  *Id.*  If there are any severe impairments, the ALJ proceeds to step three.  §§ 404.1520(a)(4); 416.920(a)(4).

At step three, the ALJ determines whether any severe impairment or combination of impairments meets or equals an impairment listed in the regulations. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the claimant's severe impairment or combination of impairments meets or equals one listed in the regulations, the claimant is disabled.  *Id.*  But if the ALJ finds that no severe impairment or combination of impairments meets or equals any in the regulations, the ALJ proceeds to step four. §§ 404.1520(a)(4); 416.920(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC").  *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e); 416.920(a)(4)(iv); 416.920(d)-(e).  The RFC is a holistic assessment of the claimant—addressing both severe and non-severe medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy.  *See* §§ 404.1545; 416.945

After determining the claimant's RFC, the ALJ completes step four. §§ 404.1520(e); 416.920(e).  If the claimant can perform past relevant work, he or she is

not disabled, and the analysis ends.  §§ 404.1520(f); 416.920(f).  But if the claimant

cannot, the ALJ proceeds to step five.  §§ 404.1520(a)(4)(iv); 404.1520(f);

416.920(a)(4)(iv); 416.920(f).

In the fifth and final step, the Commissioner must present evidence showing that

the claimant is not disabled because the claimant is physically and mentally capable of

adjusting to an alternative job.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987);

20 C.F.R. §§ 404.1520(a)(4)(v), (g); 416.920(a)(4)(v), (g).  More specifically, the

Commissioner bears the burden of proving that the claimant "retains a residual

functional capacity to perform alternative substantial gainful work which exists in the

national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ found at step one that Kancar had not engaged in

substantial gainful activity since the alleged onset date.  Docket Item 6 at 19. At step

two, the ALJ found that Kancar had "the following severe impairments: bipolar II

disorder with panic attacks, posttraumatic stress disorder (PTSD), and asthma."  *Id.*

The ALJ found that Kancar's "other medically determinable physical impairments,

including those related to sleep apnea, obesity, lumbar degenerative disc disease, and

osteoarthritis of the hips," were "non-severe" because "they ha[d] not affected and

[were] not expected to affect [Kancar] more than minimally for a duration of twelve

months or longer."  *Id.* at 20.  The ALJ also found that "[Kancar's] allegations regarding

her physical limitations [were] inconsistent with the treatment records, showing largely

normal physical examinations despite complaints of pain."  *Id.* at 23.

At step three, the ALJ determined that Kancar did "not have an impairment or

combination of impairments that meets or medically equals the severity of one of the

listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 21.  More

specifically, the ALJ found that Kancar's mental impairments did not meet Listing 12.04

(depressive, bipolar, and related disorders) or 12.15 (trauma- and stressor-related

disorders) because Kancar did not have at least two marked limitations or one extreme

limitation in the areas of understanding, remembering, or applying information;

interacting with others; concentrating, persisting, or maintaining pace; or adapting or

managing herself.  *Id.*; *see also id.* at 26-27 (finding "no more than mild limitations" in

understanding, remembering, or applying information; interacting with others; and

concentrating or maintaining pace; and "no more than moderate limitations" in adapting

or managing oneself).

> The ALJ then found that Kancar had the following RFC:
>
> [Kancar can] perform the full range of work at all exertional levels[2] but with the following nonexertional limitations: [Kancar] must avoid concentrated exposure to extreme cold, humidity, fumes, odors, gases, and poor ventilation.   From a mental standpoint, [Kancar] can understand and remember instructions and procedures, can maintain adequate attention to complete ordinary work tasks, and can respond in an appropriate manner, but can cope with only basic changes and make only routine decisions.

*Id.* at 21.  In reaching this determination, the ALJ gave "little weight" to the opinion of

Kancar's treating psychiatric nurse practitioner, Faye E. Taber, and to Kancar's various

scores on the Global Assessment of Functioning ("GAF") scale; "partial weight" to the

opinions of Kancar's treating mental health counselor, Tracey E. Pay, L.C.S.W., and of

---

[2] "Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more.  If someone can do very heavy work, . . . he or she can also do heavy, medium, light and sedentary work."  20 C.F.R. §§ 404.1567(e); 416.967(e).

the consulting psychologist, Gina Zali, Psy.D.; and "great weight" to the opinion of the non-examining psychological consultant, O. Austin-Small, Ph.D.  *Id.* at 28-29.

The ALJ then found that Kancar could perform several of her prior jobs, including as a personal care aide, medical assistant, nurse assistant, and phlebotomy assistant. *See id.* at 30.  The ALJ also credited the testimony of a vocation expert that, given her RFC, Kancar alternatively could find work as a dining room attendant, routing clerk, and addresser.  *See id.* at 31-32.

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry."  *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination."  *Id.*  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'"  *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).  "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an

unacceptable risk that a claimant will be deprived of the right to have her disability

determination made according to correct legal principles."  *Johnson*, 817 F.2d at 986.

## DISCUSSION

Kancar argues that the ALJ erred in two ways.  Docket Item 8-1.  She first argues

that the ALJ erred in finding that none of her joint and back impairments were severe.

*Id.* at 14-18.  She also argues that the ALJ improperly relied on his own lay judgment in

determining her mental residual functional capacity ("RFC").  *Id.* at 18-26.  This Court

agrees that the ALJ erred in determining Kancar's mental RFC and, because that error

was to Kancar's prejudice, remands the matter to the Commissioner.  The Court does

not consider the physical RFC argument because it "may be affected by the ALJ's

treatment of this case on remand."  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir.

2003).

## I.      MENTAL RFC

Kancar argues that the ALJ erred in determining her mental RFC because the

ALJ ignored, without adequate explanation, specific limitations about which medical

sources in the record opined.  Docket Item 8-1 at 18-26.  This Court agrees.

The ALJ gave "great" weight to the opinion of the non-examining, consulting

psychologist, O. Austin-Small, Ph.D.  Docket Item 6 at 29.  Dr. Austin-Small reviewed

Kancar's records in November 2015 and opined that she was moderately limited in her

ability to perform several workplace skills.  *Id.* at 104-05.  The ALJ noted that Dr. Austin-

Small "[was] a licensed psychologist, an impartial expert, and an acceptable medical

source who [was] familiar with Social Security policies and regulations.  [Dr. Austin-

Small] had the opportunity to review the medical evidence of record that existed at the time of the determination and expressed an opinion that [was] consistent with and supported by the medical record." *Id.* at 29.

The ALJ also gave "partial" weight to the December 2017 opinion of Kancar's treating mental health counselor, Ms. Pay. *See id.* at 28. Ms. Pay opined that, due to her dipolar disorder, "chronic anxiety," and "high vulnerability to stress," Kancar "would not be able to function adequately in a work environment as [that setting] could exacerbate her symptoms and most likely result in decompensation of her illness and hospitalization." *Id.* at 540. Ms. Pay explained that her opinion was based on her roughly 18 months of providing weekly-to-biweekly therapy to Kancar (beginning in June 2016), as well as her knowledge of Kancar's psychiatric care from colleague NP Tabor. *Id.* Notably, Kancar received emergent care twice (in September 2015 and March 2017) for anxiety, panic attacks, and reports of suicidal ideation. *See id.* at 318, 450, 505. The ALJ reasoned:

> While the evidence support[ed] [Ms. Pay's] assertion that [Kancar] ha[d] difficulty coping with stress, Ms. Pay d[id] not adequately explain why [Kancar] would be unable to perform work with a relatively low level of stress, such as work requiring only basic changes and only routine decisions. Contrary to [Ms. Pay's] opinion, the medical evidence of record as a whole, particularly the treatment records showing largely well-controlled symptoms other than during a few isolated episodes of exacerbation of [Kancar's] symptoms, suggest[ed] that [Kancar] c[ould] tolerate a low level of stress and would not be precluded from performing work within the constrains described in this decision.

*Id.* at 28-29 (citations omitted).

And the ALJ gave "little" and "limited" weight to the October 2015 and March 2016 opinions of Kancar's treating psychiatric nurse practitioner, NP Taber. *See id.* at 28. NP Taber explained in her October 2015 statement that she had treated Kancar for

major depressive disorder and generalized anxiety disorder for over a year and opined

that Kancar's "condition . . . impair[ed] her ability to stay on task when conditions [were]

less than favorable (*e.g.* noise/distractions), due to emotional distress and anxiety that

may not be readily observable by others." *Id.* at 343 (emphasis added).  In her March

2016 statement, NP Taber explained that she had treated Kancar over the past year for

bipolar disorder and explained that Kancar's "episodes [of] moderate to severe

intensity[ ] interfer[ed] with her ability to optimally function in a work environment." *Id.* at

342.  The ALJ found that NP Taber "d[id] not adequately explain the basis of her opinion

or cite to appropriate relevant evidence in support of the limitations that she describe[d].

She also . . . d[id] not describe specific functional limitations or specify the nature or

degree of [Kancar's] limitations, making [her opinions] of limited use in identifying

[Kancar's] mental residual functional capacity and degree of mental impairment." *Id.* at

28.

     Notwithstanding these weight assignments, and notwithstanding even Dr. Austin-

Small's opinion that Kancar was restricted in her ability to perform a number of

workplace skills, the ALJ determined that just two mental RFC restrictions were

appropriate: Kancar could "cope with only basic changes and make only routine

decisions," *id.* at 21.  In other words, the ALJ determined that Kancar's bipolar disorder

largely did not restrict her ability to perform competitive work.

     The ALJ erred in several respects.  First, in limiting the weight given to Ms. Pay's

and NP Taber's opinions, the ALJ cherry-picked periods of improvement at the expense

of episodes that were more challenging.  And that ignored the Second Circuit's

admonition that because "[c]ycles of improvement and debilitating symptoms [of mental

illness] are a common occurrence, . . . it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is [not disabled]."  *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) (second alteration in original) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014)).  For that very reason, the Second Circuit has "cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination,"—to say nothing of someone like Dr. Austin-Smalls who never has seen the claimant in person—a "concern [that] is even more pronounced in the context of mental illness where . . . a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health."  *Id.* at 98 (first quoting *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013)).

The error was particularly significant given that Kancar had a long-standing relationship with both a psychiatric nurse practitioner and a mental health counselor, [3] both of whom, as noted above, opined that Kancar was significantly limited in her ability to maintain employment.  Indeed, their reasoning reflects precisely the cherry-picking concerns expressed by the Second Circuit in *Estrella*.  *See, e.g.*, Docket Item 6 at 540 (Ms. Pay opining that a work setting would "most likely result in *decompensation* of

---

[3] When Kancar filed her claim, nurse practitioners and therapists were "other source[s]," *see* 20 C.F.R. § 416.913(d)(1) (2015), whose opinions could not "establish the existence of a medically determinable impairment" but could "outweigh the opinion of an 'acceptable medical source[ ]' . . . [if, f]or example, . . . [the source] has seen the individual more often . . . and has provided better supporting evidence and a better explanation for his or her opinion," *see* Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006); *cf.* 20 C.F.R. § 416.902(a)(7) (2017) (expanding list of "acceptable medical sources" to include "licensed advanced practice registered nurse[s]").  Because Ms. Pay and NP Taber treated Kancar for over a year, an ALJ could reasonably find that their opinions deserve significant weight.

[Kancar's] illness and hospitalization" (emphasis added)); *id.* at 342-43 (NP Taber opining that Kancar was impaired by "emotional distress and anxiety *that may not be readily observable by others*" and experienced "*episodes* [of] moderate to severe intensity" (emphasis added)).

The ALJ also criticized NP Taber's opinion as vague while giving great weight to the opinion of Dr. Austin-Small which presumably was not so. But it is hard to understand how NP Taber's opinion that Kancar's "condition . . . impair[ed] her ability to stay on task when conditions [were] less than favorable (*e.g.* noise/distractions)," *id.* at 343, was any vaguer than Dr. Austin-Small's opinion that Kancar was "moderately limited" in her ability to "work in coordination with or in proximity to others without being distracted by them," *id.* at 104.

To be sure, the ALJ was not *required* to give any specific weight to the opinions of  Dr. Austin-Small, Ms. Pay, or NP Taber, but she was required to *explain*, in a logical fashion, why she believed Dr. Austin-Small was in a better position to assess Kancar's episodic bipolar disorder after a simple record review than were either of her treating mental health professionals. And to the extent the ALJ was dissatisfied with the format of, or degree of specificity provided in, Ms. Pay's and NP Taber's opinions, she should have asked them for clarification, not minimized their value. *See, e.g.*, *Rosa*, 168 F.3d at 79 ("[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is

represented by counsel or . . . by a paralegal.'" (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996))).[4]

And even if the ALJ did not err in the assignment of weight to the opinions of Dr. Austin-Small, Ms. Pay, and NP Taber, the ALJ's RFC determination still would not be supported by substantial evidence because of the numerous inconsistencies between even Dr. Austin-Small's opinion—given "great weight"—and the RFC.  In determining a claimant's RFC, an ALJ "must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that ' . . . a reviewing court . . . may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review.'"  *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (third alteration in original) (quoting *Young v. Barnhart,* 362 F.3d 995, 1002 (7th Cir. 2004))).  Here, the ALJ failed to incorporate into the RFC many of the limitations included in Dr. Austin-Small's opinion without any explanation or alternative medical source to support the alternate RFC.  And that renders this Court unable to travel the requisite "logical bridge" between the evidence and the mental RFC.

---

[4] *See also* 42 U.S.C. § 423(d)(5)(B) (requiring that the Commissioner, before rendering any eligibility determination, "make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination"); 20 C.F.R. § 404.1512(d)(1) ("Before [the Commissioner] make[s] a determination that [a claimant is] not disabled, [the Commissioner] will develop [the claimant's] complete medical history . . . [and] will make every reasonable effort to help [the claimant] get medical reports from [her] own medical sources when [she] give[s] [the Commissioner] permission to request the reports.").  *Cf. Tankisi*, 521 F. App'x at 33 (explaining that when a claimant is receiving or has received ongoing treatment from a qualified medical professional, the Commissioner has "a duty to solicit" a "medical source statement [from the claimant's treating source] about what [the claimant] can still do despite [her] impairment(s)" (quoting former 20 C.F.R. § 416.913(b)(6)) (additional citation omitted)).

For example, Dr. Austin-Small opined that Kancar was moderately limited in understanding and remembering detailed instructions, *id.* at 104, but the ALJ determined that Kancar had only "mild limitations" in "understanding, remembering, or applying information" and could "understand and remember instructions and procedures," without any nuance as to the type or complexity of instructions that Kancar could handle, *see id.* at 21, 26.  Dr. Austin-Small also opined that Kancar was moderately limited in working in coordination with or in proximity to others, accepting instructions and responding appropriately to criticism from supervisors, and getting along with coworkers or peers, *id.* at 104-05, but the ALJ determined that Kancar was only mildly limited in interacting with others and could "respond in an appropriate manner," *id.* at 21, 26.  Finally, Dr. Austin-Small opined that Kancar was moderately limiting in carrying out detailed instructions and maintaining attention and concentration for extended periods, *id.* at 104, but the ALJ determined that Kancar was only mildly limited in concentrating, persisting, or maintain pace and could "maintain adequate attention to complete ordinary work tasks," *id.* at 21, 27.

The ALJ reasoned that Kancar's regular interaction with others and weekly grocery shopping undermined her alleged deficiencies in these areas, *id.* at 26-27, but "as a lay person, the ALJ simply was not in a position to know whether" Kancar's ability to do certain activities "would in fact preclude the disabling [limitations]," *see Rosa*, 168 F.3d at 79.[5]  Moreover, as noted above, the fact that Kancar's "symptoms were well

---

[5] *See also Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("In the absence of a medical opinion to support [an] ALJ's finding as to [a claimant's] ability to perform [a certain level of] work, it is well-settled that the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.  While an ALJ is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical

controlled, other than during a few isolated episodes of exacerbation . . . , often triggered by stressful life events" does not defeat her claim.  To the contrary, it underscores the importance of a longitudinal perspective when evaluating claims premised on chronic mental illness—a perspective the ALJ did not have.

Finally, Ms. Pay opined that Kancar had a "high vulnerability to stress," *id.* at 540—an assessment the ALJ explicitly found that "the evidence support[ed]," *id.* at 28— but the ALJ did not include *any* specific stress-based limitations in Kancar's RFC. Although the ALJ stated that Kancar could "cope with only basic changes and make only routine decisions," *id.* at 21, those generalized limitations do not suffice.  "Because stress is 'highly individualized,'" an ALJ must "make specific findings about the nature of [a claimant's] stress, the circumstances that trigger it, and how those factors affect [her] ability to work."  *Stadler v. Barnhart*, 464 F. Supp. 2d 183, 189 (W.D.N.Y. 2006) (citing SSR 85-15, 1985 WL 56857, at *6 (Jan. 1, 1985) (explaining that "[b]ecause response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job . . . [and a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment")); *see also Welch v. Chater*, 923 F. Supp. 17, 21 (W.D.N.Y.1996) ("Although a particular job may appear to involve little stress, it may, in fact, be stressful and beyond the capabilities of an

---

opinions, he is not free to set his own expertise against that of a physician who submitted an opinion to or testified before him." (citation and original alterations omitted)); *Shaw v. Chater*, 221 F.3d 126, 135 (2d Cir. 2000) ("[W]hile a physician's opinion might contain inconsistencies and be subject to attack, 'a circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion.'" (quoting *Wagner v. Sec. of Health & Human Servs.,* 906 F.2d 856, 862 (2d Cir. 1990)).

individual with particular mental impairments").  The Commissioner's own regulations make that very point:

> A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job.  [F]or example, a busboy need only clear dishes from tables. But an individual with a severe mental disorder may find unmanageable the demands of making sure that he removes all the dishes, does not drop them, and gets the table cleared promptly for the waiter or waitress. Similarly, an individual who cannot tolerate being supervised may not be able to work even in the absence of close supervision; the *knowledge* that one's work is being judged and evaluated, even when the supervision is remote or indirect, can be intolerable for some mentally impaired persons.

SSR 85-15, 1985 WL 56857, at *6 (emphasis in original).  Because Ms. Pay opined that Kancar had significant limitations in dealing with stress that directly related to her long-standing mental illness—and, indeed, the ALJ observed that Kancar's "episodes of exacerbation . . . often [were] triggered by stressful life events," *id.* at 27—the ALJ was required to address how those limitations might impact Kancar's ability to perform each potential job for which she otherwise might have been qualified.

On remand, therefore, the ALJ should consider and specifically address the impact of Kancar's response to stress on her ability to work.  The ALJ also must adequately justify any reliance on the state consultant over Kancar's treating mental health professionals and, to the extent she still gives substantial weight to the consultant's opinion, consider—and either incorporate or explain her reasons for rejecting—his recommended limitations in various functioning domains.  And if the ALJ finds Ms. Pay's or NP Taber's opinions vague, she should ask them for more detailed and precise statements.

## II.    PHYSICAL RFC

Kancar also argues that the ALJ erred in finding that none of her joint and back impairments were "severe. "  Docket Item 8-1 at 14-18.  The Court "will not reach the remaining issues raised by [Kancar] because they may be affected by the ALJ's treatment of this case on remand."  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, No. 1:13-CV-924, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made.").  But on remand, the ALJ should ensure that any physical condition that "significantly limits [Kancar's] . . . ability to do basic work activities," 20 C.F.R. §§ 404.1520(c); 416.920(c), is considered a severe impairment.  *See also McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (summary order) ("[T]he standard for a finding of severity under [s]tep [t]wo of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." (citing *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir. 1995))).  The ALJ further should "consider the limiting effects of all [Kancar's] impairment(s), *even those that are not severe*, in determining [her] residual functional capacity."  *See* 20 C.F.R. § 404.1545 (emphasis added).

## **CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 9, is DENIED, and Kancar's motion for judgment on the pleadings, Docket Item 8, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.


SO ORDERED.

Dated:          August 4, 2020
                Buffalo, New York


                                        */s/ Hon. Lawrence J. Vilardo*
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE

16